Wisconsin & Arkansas Lumber Company v. Smith.

Opinion delivered April 13, 1925.

1. Master and servant—servant's knowledge of risk.—Where a servant was properly shown how to unclog ripsaws by using a stick, he will be deemed to have known of the dangers arising therefrom.

2. Master and servant—negligence of servant.—Where a foreman showed a servant how to unclog ripsaws by using a stick, an injury to the servant arising from unclogging was necessarily the result of his own carelessness.

Appeal from Saline Circuit Court; *T. E. Toler,* Judge; reversed.

STATEMENT OF FACTS.

This action was brought by F. W. Smith against the Wisconsin & Arkansas Lumber Company to recover damages for injuries sustained by him while engaged in feeding and operating a ripsaw machine in the defendant's mill.

F. W. Smith was a witness for himself. According to his testimony, he was twenty-one years of age on the 5th day of September, 1923, the day on which he was injured. He was injured on the third day after he commenced to work for the company, and was hurt while unclogging a ripsaw which he had been feeding. He was engaged in feeding ceiling about 18 inches long through the ripsaws, and it would cut the tongue and groove off of the piece of

ceiling so that it could be used for crates. The two saws in question were spaced three inches apart on the same shaft or axle, so that, when the pieces of ceiling were pushed through the space between the saws, the tongue and groove of the ceiling were cut off at the same time. The shaft on which the saws were fastened was underneath the top of a table, and the saws came up through a hole or groove in the top of the table. The section of the table through which the saws came up was a piece of timber bolted to the other part of the table top. The part of the table through which the saws ran was a piece of timber eight or ten inches wide, twelve or fifteen inches long, and was fastened to the table with bolts. While operating the ripsaws, the plaintiff stood in front of the saws, and there was a guard between him and the saws, made of pieces of 2 x 4 oak timber. The whole top of the table could be raised up, but it would take two men to raise it. When the section of the top of the table through which the saws came up was raised and let down while the saws were in motion, there was a tendency to cut off some of the board and enlarge the hole through which the saw came. When the saws were engaged in cutting the tongue and the groove off of the pieces of ceiling, the splinters and cut-off pieces would fasten or wedge themselves in the space between the saws and the board, so that the space would become clogged every twenty minutes. The foreman of the plaintiff told him to unclog the ripsaws by pushing out the splinters and pieces of wood with a stick. The foreman took a stick and showed him how to push out the splinters, before the plaintiff commenced to operate the ripsaws. He had seen the foreman take a stick and push out the splinters two or three times on the day that he was hurt, and he had punched them out himself for about twenty-five or thirty times before he was hurt. It usually took him two or three minutes to push or punch out the splinters. He was hurt about 11:25 o'clock in the morning, and at the time was engaged in pushing out the splinters with a pine

stick about twelve or fourteen inches long.   He described the way the accident happened as follows:

"Q.   What were you doing and what was it that caused your finger to be pulled into the saw?   A.   I was punching those splinters out with a stick, and the stick caught in the saw and it jerked my hand in there.   Q. How long a stick did you have?   A.   About ten or twelve inches.   Q.   Did they have one that they kept there all the time?   A.   No sir, you just picked up one."

Again he stated that the left-hand saw choked with splinters, and that he was standing to the left of it while it was running, engaged in pushing out the splinters, when the stick that he was using got caught in the saw and jerked his hand down to it.   When his hand came in contact with the running saw, the middle finger of his left hand was cut off at the second joint.   His little finger and the one next to it were not cut.

The evidence for the defendant shows that the plaintiff was engaged in pulling the splinters out from the saw with his fingers at the time he was injured.   That is, another servant of the defendant testified that he was working near the plaintiff, and, just about the fraction of a minute before he got hurt, he saw him pulling splinters out of the saw with his fingers, and that he did not have a stick in his hand.   This servant walked about fifteen feet away, and did not see the plaintiff at the precise moment he was injured.

From a verdict and judgment in favor of the plaintiff the defendant has duly prosecuted an appeal to this court.

*Buzbee, Pugh & Harrison,* for appellant.

*D. D. Glover* and *W. R. Donham,* for appellee.

HART, J., (after stating the facts).   The main question in the case is, was the defendant guilty of any negligence which caused the injury to the plaintiff?

The plaintiff's claim is that he was young and inexperienced, and that the machine was dangerous.   He was injured on the third day after he commenced to work, and claims that he was doing the work as he had been

directed to do by his foreman.   He was feeding pieces of
ceiling through two ripsaws placed three inches apart.
As the pieces of ceiling were pushed through the spaces
between the ripsaws, the saws would cut off the tongue
and groove of the piece of ceiling at the same time.   The
saws came up through holes in the top of the table, and
the splinters which were cut off of the pieces of ceiling
would accumulate and clog the saws about every twenty
minutes.   The foreman showed the plaintiff how to push
the accumulated splinters away while the saws were run-
ing, and thereby unclog them.   He said that, while doing
this with a piece of pine stick about twelve **inches long,**
the stick caught in the saw and jerked his hand down to
the saw and cut off a piece of his middle finger.

Thus it will be seen that, by the plaintiff's own testi-
mony, he was shown how to do the work in question, and
it is difficult to see what additional warning the defendant
could have given which would in any manner have helped
the plaintiff to avoid being hurt while unclogging the rip-
saws.   The plaintiff had just arrived at full age, and his
testimony shows him to be a young man of fair intelli-
gence.   It is unnecessary to discuss the point made as to
the groove having been cut larger than necessary by let-
ting the table top up and down. The size of the groove had
nothing whatever to do with the injury.   The proximate
cause of the plaintiff's injury was allowing his hand to
be drawn against the revolving saw while engaged in
pushing the accumulated splinters through the groove so
that the saw would become unclogged.   The plaintiff's
own testimony shows that his injury was the result of an
accident which could have been avoided by ordinary care
on his part.   As we have just seen, his  foreman  had
shown him how to take a stick and push away the accu-
mulated splinters.   While he does say that no particular
kind of stick was furnished him for that purpose, he tes-
tified that the stick he was using was ten or twelve inches
long, and was not even broken while he was pushing the
splinters away.   It is difficult to see how the stick that he
was using could have become fastened in the saws and

have jerked his finger down to the saw, if he had been exercising ordinary care in doing his work. After his foreman had shown him how to unclog the ripsaws by the use of a stick, he must be deemed to have known and to have fully appreciated the danger arising therefrom, and we fail to discover any testimony tending to show any negligence on the part of the defendant. The case is within the principles of law decided in *Fordyce Lumber Co.* v. *Lynn,* 108 Ark. 377. His foreman having shown him how to unclog the ripsaws, by pushing away with a stick the particles of wood which accumulated, it must be said that the method of doing the work was under the plaintiff's own control and that the accident was the result of his own carelessness.

It follows that the court erred in submitting the negligence of the defendant to the jury, and, for that error, the judgment will be reversed, and, inasmuch as the cause of action appears to have been fully developed, it will be dismissed here.